UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| ESTATE OF SONJA EITELJORG by | ) | |
| ROGER EITELJORG, AS PERSONAL | ) | |
| REPRESENTATIVE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:09-cv-0726-SEB-DML |
| | ) | |
| HARRISON EITELJORG II and JACK M. | ) | |
| EITELJORG, | ) | |
| Defendants. | ) | |

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS'
AMENDED MOTION TO DISMISS**

This cause is before the Court on Defendants' Amended Motion to Dismiss

Plaintiff's Complaint [Docket No. 42], filed on September 20, 2010, pursuant to Federal

Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7).  On June 12, 2009, Plaintiff,

the Estate of Sonja Eiteljorg by Roger Eiteljorg, as personal representative ("the Estate"),

filed suit against Defendants, Harrison Eiteljorg II and Jack M. Eiteljorg ("the

Eiteljorgs"), for breach of contract.  The Eiteljorgs have moved to dismiss the Estate's

complaint for lack of subject matter jurisdiction, failure to state a claim upon which relief

can be granted, and failure to join a necessary party; the Estate opposes this motion.  For

the reasons detailed below, we DENY Defendants' Amended Motion to Dismiss on Rules

12(b)(1) and 12(b)(7) grounds, and we GRANT the motion WITHOUT PREJUDICE on

Rule 12(b)(6) grounds.

**Factual Background**

Sonja Eiteljorg ("Sonja"[1]), the widow and second wife of Harrison Eiteljorg

("Harrison"), was a citizen of the State of Florida at the time of her death on July 1, 2003.

Compl. ¶ 1.  The legal representative of her Estate is Roger Eiteljorg ("Roger"),

Harrison's stepson and Sonja's biological son.  Compl. Ex. D ¶ 3.  Because the federal

diversity statute treats the legal representative of an estate as a citizen of the same state as

the decedent, the Estate is deemed a citizen of the State of Florida.  28 U.S.C. §

1332(c)(2); *Gustafson v. zumBrunnen*, 546 F.3d 398, 399 (7th Cir. 2008).  Harrison

Eiteljorg II ("Nick") and Jack M. Eiteljorg ("Jack") are the biological sons of Harrison

Eiteljorg and his first wife.  Compl. Ex. D ¶ 2.  Nick is a citizen of the Commonwealth of

Pennsylvania; Jack is a citizen of the State of Texas.  Compl. ¶¶ 2-3.

On September 29, 1994, Harrison established the Harrison Eiteljorg Revocable

Trust–JN (the "JN Trust"); he amended the trust on July 28, 1995 and served as its sole

trustee until his death in 1997.  Compl. ¶ 7; Compl. Ex. A.  The JN Trust became a

qualified terminable interest property trust upon Harrison's death, with Sonja as its

lifetime income beneficiary and Nick and Jack as remaindermen.  *Id.* ¶ 8.  Sonja, Nick,

Jack, Roger, and John Lienhart ("Lienhart") were named as successor co-trustees.  *Id.* ¶ 9.

Harmony was short-lived among the co-trustees, though, as they subsequently found

---

[1]Except when referring to the Estate or the Eiteljorgs in their capacity as joint defendants,
we use first names throughout the order.  We do so to alleviate the confusion otherwise inherent
when several parties share the same last name.

themselves mired in major disagreements about the proper allocation of trust assets.  *Id.* ¶

11.  To that end, Sonja, Nick, and Jack entered into a settlement agreement setting forth a

mutually agreeable allocation plan on December 18, 2001 (the "Settlement Agreement").

*Id.* ¶ 12; Compl. Ex. B.

Of particular importance to the parties in this case is the provision of their

Settlement Agreement that contemplated a mutual release.  Paragraph J states, in relevant

part:

> As of . . . (the "Key Date"[2]) . . . each of the Parties to this Agreement hereby
> releases and forever discharges each of the other Parties to this Agreement, their
> agents, representatives, successors, servants, employees, insurers and assigns, from
> any and all claims, demands, rights, and causes of action of any kind which such
> releasing Party now has, whether known or unknown, or hereafter may have,
> against any of the other Parties (whether such other Party was acting in a personal
> or a fiduciary capacity) relating to actions or omissions occurring on or before the
> Key Date relating to the administration and/or operation of the Estate, the
> administration and/or operation of the JN Trust, or any conduct of any type by
> Sonja, Nick or Jack, in his or her individual capacity, in his or her capacity as a
> Co-Trustee of the JN Trust, in his or her capacity as a Co-Personal Representative
> of the Estate, or in any other capacity.

Compl. Ex. B at 3-4.

Immediately following the mutual release clause is Paragraph K, which is

captioned "Litigation."  This provision directs the transfer of money, art, or a combination

of both to Sonja in the event of the following:

> [i]f Nick or Jack or any of their beneficiaries in their individual capacities brings,
> or . . . as a Co-Trustee . . . or if Nick in his capacity as Co-Personal Representative
> of the Estate votes in favor of bringing suit against any of i) Sonja individually, in

---

[2]December 18, 2001 is the "Key Date."

her capacity as a Co-Trustee . . . or in her capacity as a former Co-Personal Representative of the Estate; ii) the Estate or any Co-Personal Representative of the Estate; iii) the JN Trust or any Co-Trustee of the JN Trust; or iv) any descendant or heir of Sonja, which suit relates to the Estate or the actions of Sonja, the Co-Personal Representatives of the Estate or the Co-Trustees of the JN Trust prior to the Key Date . . . .

Compl. Ex. B. at 4.

On January 6, 2005, the Eiteljorgs filed their Verified Petition for Trust Distribution and to Substitute Corporate Trustee in the probate division of the Marion Superior Court.  Compl. Ex. C. at 1.  They asserted various breaches of fiduciary duty by co-trustees Roger and Lienhart, requested a new independent corporate trustee, and entreated the court to "order . . . [Roger and Lienhart] to pay their own attorneys' fees and . . . [to forgo] any Trustee fees from the Trust for the final quarter of 2004."  *Id.* at 2-3.  In its June 12, 2007 order, the probate court found that Roger and Lienhart breached only the fiduciary duty to administer the JN Trust according to its terms.  Compl. Ex. D. at 27. The court held an evidentiary hearing to determine monetary damages on March 26, 2008 and April 8, 2008.  Def.'s Br. Ex. A at 3.  Because the presiding judge died before a final ruling could be issued, the final order on damages was not entered until April 12, 2010. *Id.*  The court ultimately awarded $156,701.42 as compensatory damages to Nick, $112,046.77 as compensatory damages to Jack, and $353,612.81 as attorneys' fees to Nick and Jack together.  *Id.* at 31, 32.

Roger and Lienhart appealed the probate court's order.  In their May 20, 2010 appellants' case summary, they framed the issue as "[w]hether the trial court properly

4

determined that Roger Eiteljorg and John Lienhart committed a breach of trust and are liable for damages and attorneys['] fees." Def.'s Br. Ex. B at 6. The Indiana Court of Appeals handed down its decision on June 27, 2011 affirming the probate court's judgment that Roger and Lienhart are liable for breach of their duty to administer the JN Trust according to its terms. *In re Eiteljorg*, 951 N.E.2d 565, 570 (Ind. Ct. App. 2011). However, the appellate court reversed the probate court's calculation of attorneys' fees and found that $150,000 was the more appropriate amount. *Id.* at 573. The appellate court also remanded the action for a determination of compensatory damages to reflect that "Nick and Jack were . . . deprived of $1.2 million for nine months." *Id.*

On June 12, 2009, the Estate filed its Complaint against the Eiteljorgs in this court asserting a breach of contract against the Eiteljorgs and requesting damages as detailed in the Settlement Agreement as well as an award of pre-judgment interest, fees, and costs.

## Legal Analysis

### I. Standards of Review

The Estate has filed its motion to dismiss pursuant to Rules 12(b)(1), 12(b)(6), and 12(b)(7) of the Federal Rules of Civil Procedure. Rule 12(b)(1) requires dismissal if the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Rule 12(b)(6) directs dismissal if the plaintiff's complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Rule 12(b)(7) allows dismissal for failure to join a party under Federal Rule of Civil Procedure 19. Fed. R. Civ. P. 12(b)(7). Under Rule 19, an entity is a required party to an action if the court could not accord complete relief in

5

that entity's absence.  Fed. R. Civ. P. 19(a)(1)(A).  Alternatively, an entity must be joined

under Rule 19 if it claims an interest related to the subject matter of the action and "is so

situated that disposing of the action in the person's absence may . . . impair or impede the

person's ability to protect the interest; or leave an existing party subject to a substantial

risk of incurring double, multiple, or otherwise inconsistent obligations."  Fed. R. Civ. P.

19(a)(1)(B).

     In each of these procedural contexts, the court accepts all well-pleaded allegations

from the complaint as true and draws all reasonable inferences in the plaintiff's favor.

*See Moranski v. Gen. Motors Corp.*, 433 F.3d 537, 539 (7th Cir. 2005) (Rule 12(b)(6)

standard); *Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 771 (7th Cir. 2002) (Rule 12(b)(1)

standard); *Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 479 n.2 (7th Cir. 2001)

(Rule 12(b)(7) standard).  When considering a motion to dismiss under Rule 12(b)(1), the

district court "may properly look beyond the jurisdictional allegations of the complaint

and view whatever evidence has been submitted on the issue to determine whether in fact

subject matter jurisdiction exists."  *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191

(7th Cir. 1993).  The court may also examine extrinsic evidence when ruling on a motion

to dismiss under Rule 12(b)(7).  *Id.*; *see also Davis Cos.*, 268 F.3d at 480 n.4.

     By comparison, a party seeking dismissal under Rule 12(b)(6) bears a greater

burden.  Courts follow the fairly liberal "notice pleading" standard in considering

complaints under Rule 12(b)(6), which requires "a short and plain statement of the claim

showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  At this stage, "the

6

plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994). Thus, dismissal is only proper when a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court may consider exhibits attached to the complaint as part of the pleadings. *Beam v. IPCO Corp.*, 838 F.2d 242, 244 (7th Cir. 1998). Notably, a copy of the contested contract that is an exhibit to the complaint may be considered in assessing the sufficiency of the complaint without converting the Rule 12(b)(6) motion to one for summary judgment. *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002).

## II.  Lack of Subject Matter Jurisdiction

Initially, the Eiteljorgs argue that this court lacks subject matter jurisdiction over the Estate's claim and must therefore dismiss the action under Rule 12(b)(1). They base this argument on two theories: (1) that this dispute is unripe, and (2) that the subject matter of the case falls within the "probate exception" to diversity jurisdiction. We discuss the merits of each of these issues in turn.

## A.  Ripeness

We begin by addressing the Eiteljorgs' assertion that this matter is unripe for adjudication in federal court "because it is based in part on a state court's factual finding that is subject to change." Def.'s Br. at 4. Courts employ the doctrine of ripeness "to enforce prudential limitations upon their jurisdiction." *Peick v. Pension Benefit Guar.*

*Corp.*, 724 F.2d 1247, 1261 (7th Cir. 1983). In assessing whether a case is ripe for judicial review, courts generally consider two factors: "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967); *Peick*, 724 F.2d at 1261.

The Eiteljorgs contend that the Estate's case is unripe because in the Complaint, the Estate included the following finding of fact from the probate court's June 12, 2007 order:

> Nick and Jack [Eiteljorg] have brought this suit against Roger [Eiteljorg] and Lienhart as co-trustees of the JN Trust relating to the actions of the co-trustees prior to the effective date of the settlement agreement . . . . Nick and Jack sued Roger and Lienhart alleging that the investment philosophy outlined . . . and unanimously adopted by the trustees in 1998 was a breach of trust.

Compl. ¶ 20; Compl. Ex. D ¶ 45. In their briefing, the Eiteljorgs allege that the probate litigation is under appeal and that, pursuant to Indiana Rule of Appellate Procedure 66(C)(8), the appellate court is permitted to modify the trial court's findings. According to the Eiteljorgs, the Estate's reliance on this finding of fact in its complaint renders the claim hypothetical, premature, and unripe. Def.'s Br. at 5-6. They further assert that "a breach of contract claim that has for a basis such a finding of fact [one that is not guaranteed to stand] *will not even exist* if that finding is modified by the Indiana Court of Appeals." *Id.* at 6. However, our analysis leads us to disagree not only with the Eiteljorgs' interpretation of Indiana rules of court, but also with their conclusion that this action is unripe.

Rule 66(C)(8) of the Indiana Rules of Appellate Procedure empowers the appellate

8

court to "order [that] findings or a judgment be modified" as provided by Rule 52(B) of

the Indiana Rules of Trial Procedure.  The latter rule provides that, "[u]pon its own

motion at any time before a motion to correct errors (Rule 59) is required to be made, or

with or as part of a motion to correct errors," the court may open the judgment and amend

the findings of fact if:

> (1) the judgment or findings are either against the weight of the evidence, or are
> not supported by or contrary to the evidence;
> (2) special findings of fact required by this rule are lacking, incomplete, inadequate
> in form or content or do not cover the issues raised by the pleadings or evidence;
> (3) special findings of fact required by this rule are inconsistent with each other; or
> (4) the judgment is inconsistent with the special findings of fact required by this
> rule.

Ind. Trial R. 52(B).  Whether a motion to correct errors under Indiana Rule of Trial

Procedure 59 is viewed as mandatory or permissive, it "shall be stated in specific rather

than general terms" and filed no later than thirty days after the entry of final judgment.

Ind. Trial R. 59(D), (C).  This constellation of rules underscores Indiana courts' policy to

"perceive finality as an important limitation on the trial court's ability to . . . modify its

final decree." *Rohrer v. Rohrer*, 734 N.E.2d 1077, 1082 (Ind. Ct. App. 2000).  Here,

Roger and Nick filed no motion to correct errors; rather, they simply filed a notice of

appeal.  *See* Ind. Ct. App. Docket, Case No. 49-A-02-1005-TR-00485.  Further, the issue

they asked the Indiana Court of Appeals to consider did not include whether Nick and

Jack sued Roger and Lienhart as co-trustees of the Estate, which goes to the Estate's

breach of contract claim in the instant suit.  We thus are not persuaded that the issues on

appeal in state court—Roger and Lienhart's liability and associated damages—would result in any change that would preclude us from addressing the merits of the Estate's claim here.

"The ripeness doctrine requires a live, focused case of real consequence to the parties.  It does not require . . . [parties] to jump through a series of hoops, the last of which it is certain to find obstructed by a brick wall."  *Triple G Landfills, Inc. v. Bd. of Comm'rs of Fountain Cnty., Ind.*, 977 F.2d 287, 291 (7th Cir. 1992).  If "some event must happen before the plaintiff's right fully accrues, the action is naturally considered as prematurely brought." *Cohen v. Orthalliance New Image, Inc.*, 252 F. Supp. 2d 761, 768 (N.D. Ind. 2003) (quoting EDWIN BORCHARD, DECLARATORY JUDGMENTS 56-57 (2d ed. 1941)).  Here, by contrast, the now-resolved issue of whether the probate court's factual findings *might* be overturned is, in and of itself, insufficient to defeat ripeness.  *See Triple G Landfills*, 977 F.2d at 290; *Price v. Pierce*, 823 F.2d 1114, 1118-19 (7th Cir. 1987). The Eiteljorgs' objections notwithstanding, this case as framed in our court is ripe for judicial review, and the Estate has standing to bring it.  Having determined that the issues are fit for this court's resolution and that we will (indeed, must) review them, we decline to discuss the hardship to the parties of withholding judicial review.  For all of the foregoing reasons, the Eiteljorgs' Motion to Dismiss pursuant to Rule 12(b)(1) for lack of ripeness shall be DENIED.

**B.  Probate Exception to Diversity Jurisdiction**

The Eiteljorgs also argue that this court must dismiss the Estate's action under the "probate exception" to diversity jurisdiction.  This judicially created exception divests a court of jurisdiction over cases involving probate matters, even if the parties are diverse and the amount in controversy exceeds the threshold established in 28 U.S.C. § 1332(a)(1).  *Storm v. Storm*, 328 F.3d 941, 943 (7th Cir. 2003).  More specifically, "a federal court has no jurisdiction to probate a will or administer an estate."  *Dragan v. Miller*, 679 F.2d 712, 713 (7th Cir. 1982) (quoting *Markham v. Allen*, 326 U.S. 490, 494 (1946)).  This exception "also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court."  *Struck v. Cook Cnty. Pub. Guardian*, 508 F.3d 858, 860 (7th Cir. 2007).  However, the Seventh Circuit has repeatedly exhorted district courts to construe the probate exception narrowly.  *Struck*, 508 F.3d at 860; *Georges v. Glick*, 856 F.2d 971, 973 (7th Cir. 1988); *Rice v. Rice Found.*, 610 F.2d 471, 475 (7th Cir. 1979).

*Georges* instructs courts to consider four factors when interpreting the probate exception.  The first of these is the historical division of labor in the English courts, making it "at least arguable that probate matters 'were not involved in the Judiciary Act's grant of jurisdiction to the federal courts'" and leading the Supreme Court to conclude that federal courts may not probate wills or administer estates.  *Id.* at 973 (quoting *Dragan*, 679 F.2d at 713).  The second factor is certainty, in that state courts tend to be

more well-versed in probate matters. *Id.* The third and fourth rationales—judicial economy and minimizing interference with state court proceedings—are also geared toward practicality. *See id.* at 974. In a more general sense, if the district court exercises jurisdiction over an action somehow involving an estate, it must not do so with the purpose of interfering with state probate proceedings. Nor may it assume general jurisdiction over the probate proceedings. *Dragan*, 679 F.2d at 713-14 (citing *Markham*, 326 U.S. at 494).

Because lower federal courts have struggled to interpret what constitutes "interfering with probate proceedings," the Supreme Court has recently attempted to elucidate the controlling principles on this issue. *Marshall v. Marshall*, 547 U.S. 293, 311 (2006) (citing *Storm*, 328 F.3d at 943-45). *Marshall* instructs us that *Markham* still stands, in that a federal court "may exercise its jurisdiction to adjudicate rights in such property where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court." *Id.* at 296 (quoting *Markham*, 326 U.S. at 494). However, it clarifies *Markham* as follows:

> We read *Markham*'s enigmatic words . . . to proscribe "disturb[ing] or affect[ing] the possession of property in the custody of a state court." True, that reading renders the first-quoted passage in part redundant, but redundancy in this context, we do not doubt, is preferable to incoherence. In short, we comprehend the "interference" language in *Markham* as essentially a reiteration of the general principle that, when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*. Thus, the probate exception reserves to state probate courts the probate or annulment of a will and

12

> the administration of a decedent's estate; it also precludes federal courts from
> endeavoring to dispose of property that is in the custody of a state probate court.
> But it does not bar federal courts from adjudicating matters outside those confines
> and otherwise within federal jurisdiction.

*Id.* at 311-12 (internal citations omitted).

In *Marshall*, the claim before the federal court was tortious interference with a gift

or inheritance.  *Id.* at 296.  The Court found that no "'sound policy considerations'

militate[d] in favor of extending the probate exception to cover [that] case," noting that

"[s]tate probate courts possession no 'special proficiency . . . in handling [such] issues."

*Id.* at 312 (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 703-04 (1992)).  Stated

otherwise, the Court did not deem that suit "ancillary" to probate in the sense that keeping

it in federal court would impair policies, such as those articulated in *Georges*, that the

probate exception serves.  *See Dragan*, 679 F.2d at 715-16.  We construe *Marshall* and

related Seventh Circuit precedent to support our decision today that if an economic tort is

outside the narrow confines of the probate exception, so is a breach of contract claim.

Nevertheless, the Eiteljorgs allege that invoking the probate exception to diversity

jurisdiction serves a number of policies for which the exception is intended.  They first

appeal to judicial economy and argue that resolving the Estate's claim here will yield

"inefficient piecemeal litigation," claiming that any Settlement Agreement issues should

have been presented in probate court.  Def.'s Br. at 8.  Having familiarized ourselves with

the matters the probate court has handled, we disagree.  The probate court's June 12, 2007

order does, as the Eiteljorgs state, "show[] that the [December 18, 2001] Trust Settlement

13

Agreement was the subject of testimony and evidence" in that litigation. *Id.* Even so, the order is concerned with the Settlement Agreement's reapportionment of trust assets and Roger and Lienhart's duties thereunder. It does not delve into the release and litigation clauses discussed above, both of which are central to the Estate's current breach of contract claim. Def.'s Br. Ex. D at 5. Knowing that these portions of the agreement must be revisited to resolve the instant action, and bearing in mind the turnover in the associated probate litigation,[3] we cannot conclude that judicial economy supports extension of the probate exception to this case.

The Eiteljorgs' other proposed policy considerations are similarly unpersuasive. Neither "relative expertness" of the probate court nor "avoid[ing] unnecessary interference with the state system of probate law" immediately precludes us from adjudicating the Estate's current contract claim. Def.'s Br. 8-9 (quoting *Storm*, 328 F.3d at 944). We believe it is clear under *Marshall* that the test for whether a case fits within the probate exception is simple. Specifically, we are required to ask "whether a federal plaintiff seeks an *in personam* judgment against a defendant, as opposed to the probate or annulment of a will or other relief seeking to reach a *res* in the custody of a state court" before determining if "the special proficiency of state courts with respect to the issues presented" justifies extending the probate exception to the case. *Johns v. Mitchell*, No.

---

[3]As previously noted, Judge Deiter passed away before the determination of damages in the probate litigation. Judge Pratt, his successor in supervising this litigation, is no longer available for the reason that she now sits on the federal bench.

06-924-GPM, 2007 WL 496391, at *2 (S.D. Ill. Feb. 13, 2007) (citing *Marshall*, 547 U.S.
at 297).

 Here, the Estate's claim does not request an *in rem* remedy.  Determining whether
the Eiteljorgs breached the terms of the Settlement Agreement does not require us to
interfere with the *res* that is the subject matter of the state probate proceedings.  "A
lawsuit for breach of contract is 'a quintessential *in personam* proceeding.'"  *McRaith v.
Am. Re-Ins. Co.*, No. 09 C 4027, 2010 WL 624857, at *3 n.2 (N.D. Ill. Feb. 17, 2010)
(internal citation omitted).  Moreover, this lawsuit does not involve the probate or
annulment of Harrison's will, nor does it involve actual administration of the Estate.  This
court would also not be disposing of assets in the custody of the probate court because
this action is against Nick and Jack personally and seeks damages for their alleged breach
of contract.  *See, e.g.*, *Kozlowski v. Kozlowski*, No. 1:10-cv-01538-MJD-RLY, 2011 WL
4349446, at *3 (S.D. Ind. Sept. 16, 2011).  Finally, the Estate's claim of breach of
contract is not within the special proficiency of a state court.  *See RLI Ins. Co. v. Conseco,
Inc.*, 543 F.3d 384, 390 (7th Cir. 2008); *Craig v. Pepperidge Farm, Inc.*, No. 1:06-cv-
954-SEB-DML, 2009 WL 553787, at *8 (S.D. Ind. Mar. 3, 2009); *Royster v. Bd. of
Church Extension*, No. 1:05-cv-1383-DFH-VSS, 2006 WL 3247244, at *1 (S.D. Ind.
Mar. 2, 2006) (noting, where one count was for breach of contract, that "[t]he [probate]
exception does not apply to cases with other grounds for federal jurisdiction, as in this
case").  Consequently, we hold that the probate exception does not serve to bar the

Estate's claim, and, for all of the foregoing reasons, the Eiteljorgs' Motion to Dismiss pursuant to Rule 12(b)(1), as it relates to the probate exception to diversity jurisdiction, shall be DENIED.

## III. Failure to State a Claim for Relief

The Eiteljorgs have also asked the Court to dismiss the Estate's lawsuit for failure to state a claim upon which relief may be granted. They begin this portion of their argument by noting that "[a] plaintiff . . . 'may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment.'" Def.'s Br. at 12 (quoting *Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 645 (7th Cir. 2006)). Next, they direct our attention to the Complaint, wherein the Estate avers that "Defendants have breached their material obligations under the Settlement Agreement by subsequently bringing suit against Roger and . . . Lienhart." Def.'s Br. at 12 (quoting Compl. ¶ 25). Although the Eiteljorgs express some doubt that Paragraph K of the Settlement Agreement contains "material terms," they cite the portion of the Complaint alleging that, "[a]s a material term of the Settlement Agreement, as reflected in Paragraph K of the Settlement Agreement, Nick and Jack . . . agreed not to bring any future suit" related to the Estate. Def.'s Br. at 12 (quoting Compl. ¶ 13). They argue that because Paragraph K "does not contain an agreement by Defendants not to bring any future suit," the Eiteljorgs could not have "breached" any term of the Settlement Agreement by filing the 2005 probate action. Def.'s Br. at 14. Consequently, they opine that the Complaint's

16

assertions conflict with the actual terms of the Settlement Agreement and that the Estate

"has pleaded itself out of court" by attaching the Settlement Agreement to the Complaint.

Def.'s Br. at 13-14.

The Estate responds that such "hairsplitting" assertions are hypertechnical and

unpersuasive.  In its view, the Settlement Agreement elucidated that the Eiteljorgs would

be liable to the Estate for breach of contract if they sued the released parties for conduct

preceding the Key Date.  Pl.'s Br. at 12.  Specifically, the Estate alleges:

> It is clear from even a cursory review of the Settlement Agreement that its primary
> purpose was to resolve all outstanding disputes among the various parties for any
> and all actions taken *prior to the Key Date* and alleviate the potential for
> subsequent litigation *related to such actions*. . . . Paragraph K[] further confirms . .
> . the intent of the release provision . . . . and Nick and Jack breached the provision
> by initiating the state court suit against John Lienhart and Roger Eiteljorg as co-
> trustees of the JN Trust *for alleged actions or omissions that occurred prior to the
> Key Date*.

*Id.* at 14 (emphases added).  The relevant pre-Key Date conduct, as stated in the

Complaint, is "based in part on the Allocation of Trust Asserts . . . prior to the Key Date."

Compl. ¶¶ 17, 20.

There is some confusion as to the subject of the Eiteljorgs' probate claims.  In their

initial verified petition before the probate court, the Eiteljorgs dispute Roger and

Lienhart's conduct "[i]n the year and a half since Mrs. Eiteljorg's [July 2003] death."

Compl. Ex. C at 2.  The only mention of pre-Key Date conduct is the creation and

funding of the JN Trust between 1994 and 1997.  *Id.* at 1.  Judge Deiter's June 12, 2007

order also deals mostly with post-Key Date conduct, but it does note that, "to the extent Nick and Jack base their claims of breach on the initial investment strategy . . . in 1998, such claims are barred." Compl. Ex. D at 30 (citation omitted).

Pursuant to Rule 12(b)(6), "[a] motion to dismiss is granted where it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Lee v. City of Chi.*, 330 F.3d 456, 459 (7th Cir. 2003). We examine only the Complaint and its associated exhibits at this stage, not the merits of the lawsuit. *See Autry v. Nw. Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998); *Massey*, 2005 WL 1939952, at *1. Having accepted the Settlement Agreement as an exhibit to the Complaint, we now consider whether these two documents, as they relate to the allegations in the Complaint, state a claim that the Eiteljorgs breached the Settlement Agreement by suing the Estate in probate court.

Indiana law sets out three *prima facie* elements for a breach of contract claim: the existence of a contract, the defendant's breach thereof, and damages. *Niezer v. Todd Realty, Inc.*, 913 N.E.2d 211, 215 (Ind. Ct. App. 2009). In reviewing the complaint for these elements, "we are not obliged to ignore any facts . . . that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law." *In re Wade*, 969 F.2d 241, 250 (7th Cir. 1992) (citation omitted). Nevertheless, we must consider that Indiana law permits any party to disagree as to the interpretation of a contract. Courts have refused to consider this conduct a "breach," even if the party is incorrect. *Willsey v.*

18

*Peoples Fed. Sav. & Loan Ass'n of E. Chi.*, 529 N.E.2d 1199, 1208 n.7 (Ind. Ct. App. 1988) (citing cases).

Resolving this portion of the Eiteljorgs' Motion to Dismiss requires us to resolve the apparent tension among allegations in the Complaint and the exhibits attached thereto. "It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *N. Ind. Gun & Outdoors Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998); *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co. of Chi.*, 927 F.2d 988, 991 (7th Cir. 1991). Upon review of the submitted materials, we find the following inconsistent allegations problematic:

> (1) Defendants have breached their material obligations under the Settlement Agreement by subsequently bringing suit against Roger Eiteljorg and John Lienhart relating to the administration and/or operation of the JN Trust . . . prior to the Key Date, December 18, 2001; and
>
> (2) [C]o-trustees Roger Eiteljorg and John Lienhart have breached their Trust duties set forth in Article I, Clause 3.

Compl. ¶ 25; Compl. Ex. C at 3.  Article I, Clause 3 of the JN Trust agreement details the manner by which trust assets were to be distributed following "the death of the survivor of Settlor."  Compl. Ex. A at 2.  Here, the survivor was Sonja, whose July 1, 2003 death clearly transpired after the Key Date.  Thus, as we understand the pleadings, Exhibit C calls the Complaint into question by indicating that the probate suit concerned conduct *after* the Key Date, not *before*, as the Complaint avers.  Allowing this exhibit to control,

19

as Seventh Circuit precedent permits, we must conclude that the Estate has presented

facts that may not, in and of themselves, establish a breach of the Settlement Agreement.

We also note the Eiteljorgs' contention that, contrary to the Complaint, Paragraph

K does not compel them "not to bring any future suit." Def.'s Br. at 14. The Estate

argues that "[t]he Settlement Agreement could not be more clear" as to the parties' intent.

Pl.'s Br. at 12. Again, we respectfully disagree. Taken at face value, we recognize that

Paragraph K may be subject to multiple interpretations. As in any breach of contract

claim, "the analytical touchstone is the contract itself." *Callaway v. Volex, Inc.*, No. IP

01-1505-C-B/S, 2003 WL 22425018, at *3 (S.D. Ind. Mar. 28, 2003). The terms of the

Settlement Agreement control our determination of the parties' contractual intentions,

and, in the absence of ambiguity, the parol evidence rule limits our review to those terms

alone. Parol evidence is inadmissible to contradict a fully integrated written agreement,

but it may be introduced to clarify or interpret an ambiguous term or phrase. *Pepsi-Cola*

*Co. v. Steak 'N Shake, Inc.*, 981 F. Supp. 1149, 1156 (S.D. Ind. 1997). We do not dispute

that in the instant litigation, some clarification of the parties' intent may be necessary.

However, we note that the Estate would have this court rule on what the parties' precise

intent was in forming the Settlement Agreement—notably, whether the wording "future

suit" was mandatory to prove or disprove breach. *See* Pl.'s Br. at 14. We decline to do

so, at least at this stage of the litigation. "If the language of an alleged contract is

ambiguous regarding the parties' intent, the interpretation of the language is a question of

fact which a [court] cannot properly determine on a motion to dismiss." *Dawson v. Gen. Motors Corp.*, 977 F.2d 369, 373 (7th Cir. 1992) (citation omitted). Indiana law specifies that contract language is ambiguous not merely due to competing interpretations; the standard is whether "reasonably intelligent people," such as this court, "could honestly find the contract's provisions susceptible to more than one interpretation." *Local No. 131 Nat'l Conf. of Firemen & Oilers v. Indianapolis Water Co.*, No. 1:04-cv-1323-SEB-JPG, 2005 WL 2428251, at *3 (S.D. Ind. Sept. 30, 2005) (citing *Abbey Villas Dev. Corp. v. Site Contractors, Inc.*, 716 N.E.2d 91, 99-100 (Ind. Ct. App. 1999)).

Nevertheless, because we find that the Complaint does not clearly embrace a breach of the Settlement Agreement, we conclude that the Estate has not properly set out a claim for which relief can be granted. We must therefore GRANT the Eiteljorgs' Motion to Dismiss on these grounds, but our dismissal is WITHOUT prejudice, thus allowing the Estate leave to amend its Complaint.[4] The Court requests that any such revisions by the Estate plead facts that, read in conjunction with any exhibits, cast no doubt on its *prima facie* case.

## IV. Failure to Join the JN Trust as a Party to the Action

Finally, notwithstanding our resolution of the parties' Rule 12(b)(6) argument, we consider the Eiteljorgs' final assertion: that dismissal is warranted for the Estate's failure

---

[4]Because of our decision on this issue, we need not address whether the Estate's claim is a compulsory counterclaim, as the Eiteljorgs assert.

to join the JN Trust as a party in the instant action.  The Estate rejoins that this argument

fails because the JN Trust is not an "indispensable" party.[5]  Pursuant to Rule 12(b)(7) of

the Federal Rules of Civil Procedure, a party may move for dismissal of a lawsuit "when

the other party has 'fail[ed] to join a required party' under Rule 19(a)."  *No Baloney

Mktg., LLC v. Ryan*, 2010 WL 1286720, at *13 (S.D. Ind. Mar. 26, 2010) (citing Fed. R.

Civ. P. 12(b)(7)).  Rule 19(a), titled "Person Required to Be Joined if Feasible," provides:

> (1) *Required Party.*  A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
>> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>>
>> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>>
>>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>>
>>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).  If a required party is not joined, and if joinder is not feasible, the

court "must determine whether in equity and good conscience, the action should proceed

among the existing parties or should be dismissed."  Fed. R. Civ. P. 19(b).  We resolve

this issue by answering two questions: (1) whether the JN Trust is a required party, and

(2) assuming *arguendo* that the JN Trust is a required party, whether the case should be

---

[5]We note that whether a party is "indispensable" is no longer the applicable standard under the Rules.  The proper question is whether that party is required, if feasible, to be joined.

dismissed for want of their participation.

## A.  Is the JN Trust a Required Party?

In addressing whether the JN Trust is a required party, we first address the issue of whether the parties will be able to obtain "complete relief" in the JN Trust's absence. The Eiteljorgs contend that they are unclear how the Court can "accord complete relief among existing parties" without joinder of the JN Trust.

The Eiteljorgs also allege that the Court must determine "whether the JN Trust is 'indispensable'" and cite *Davis Companies v. Emerald Casino, Inc.*, 268 F.3d 477, 484 (7th Cir. 2001), for the proposition that "it is true that 'a contracting party is the paradigm of an indispensable party.'" *Id.* (citation omitted); Def.'s Br. at 19.  We have examined *Davis Companies* and note that the Eiteljorgs' citation was culled from the following excerpt:

> [W]hile it is true that "a contracting party is the paradigm of an indispensable party," *Hall*, 100 F.3d at 479 (citation omitted), "[w]hen a person is not a party to the contract in litigation and has no rights or obligations under that contract, even though the absent party may be obligated to abide by the result of the pending action by another contract that is not at issue, the absentee will not be regarded as an indispensable party in a suit to determine obligations under the disputed contract . . . ."  7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure Civil 3d § 1613, at 197 (2001).  In addition to . . . [the party omitted from the action,] there were no doubt a number of other parties involved in and certainly interested in the effort to . . . [achieve the aim of the contract].  Obviously . . . [the instant litigation] would not label these parties as necessary litigants.

*Davis Cos.*, 268 F.3d at 484.  Thus, the Seventh Circuit recognizes that being bound by or

interested in results of pending litigation does not make a party one that is "required" to be joined under Rule 19(a)(1).

Moreover, "[t]he term complete relief refers only 'to relief between the persons already parties, and not as between a party and the absent person whose joinder is sought.'" *Perrian v. O'Grady*, 958 F.2d 192, 196 (7th Cir. 1992) (quoting *Arkwright-Bos. Mfrs. Mut. Ins. Co. v. City of N.Y.*, 762 F.2d 205, 209 (2d Cir. 1985)).  The critical issue, as set forth by the Settlement Agreement's own terms, is whether the Estate will receive enumerated artwork or money because of the Eiteljorgs' probate court suit.  Sonja, Nick, and Jack all read and signed the Settlement Agreement, signifying their agreement to the same.  Because they are, or were, co-trustees of the JN Trust, joining the trust to this litigation would be an unnecessary formality.  Additionally, Paragraph K contains Nick and Jack's agreement to be jointly and severally liable if the JN Trust cannot satisfy its own liability.  It therefore seems clear to us in resolving the first issue regarding joinder that complete relief is possible as between the Estate and the Eiteljorgs.

We next address whether the JN Trust has an interest in the present action under Rule 19(a) and in that regard conclude that any such interest is too attenuated given the purposes of this Rule.  Even though the JN Trust is mentioned by name in the pleadings, the conduct at issue has clearly been attributed to the Defendants, and not to the Trust itself.  Nor does any "interest" become stronger because of the fact that the JN Trust may be required at some point to transfer various items to the Estate.  At present, we are not

persuaded that the JN Trust becomes a required party "just because it may need to indemnify . . . [any party] in the future." *See Askew v. Sheriff of Cook Cnty., Ill.*, 568 F.3d 632, 637 (7th Cir. 2009).  We have not decided today that the Eiteljorgs breached their contract with the Estate, and, as the Seventh Circuit aptly noted in *Askew*, "that day may never come." *Id.*  Therefore, we conclude that the JN Trust is not a party that must be joined, if feasible, within the meaning of Rule 19.

## B.  If the JN Trust Were a Required Party, Should the Case Be Dismissed?

Even if the JN Trust were a required party under Rule 19(a)(1), the Court could not proceed under Rule 19(a)(2), which would allow us to effect joinder via court order.  The JN Trust cannot be joined because its joinder would destroy complete diversity of citizenship, the only basis for subject matter jurisdiction here.  Specifically, joining the JN Trust would place citizens of the same state on both sides of the action: the JN Trust as defendant and Roger Eiteljorg, its co-trustee, as plaintiff.  "[A] trust is a citizen of whatever state the trustee is a citizen of." *May Dep't Stores Co. v. Fed. Ins. Co.*, 305 F.3d 597, 599 (7th Cir. 2002).  With diversity principles preventing us from joining the JN Trust by court order, we must consult Rule 19(b) for guidance.  Even so, dismissal is not automatic; we must carefully weigh the factors of Rule 19(b), "with an emphasis on practical measures that will allow either the entire suit or part of it to go forward." *Askew*, 568 F.3d at 635.  The Rule 19(b) factors are:

> (1) the extent to which a judgment is rendered in the person's absence might prejudice that person or the existing parties;

      (2) the extent to which any prejudice could be lessened or avoided by:

           (A) protective provisions in the judgment;

           (B) shaping the relief; or

           (C) other measures;

      (3) whether a judgment rendered in the person's absence would be adequate; and

      (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).  We assign no special weight to any factor in our fact-sensitive assessment of whether, "in equity or good conscience," the action should proceed.  *See Extra Equipamentos E Exportado Ltd. v. Case Corp.*, 361 F.3d 359, 361-62 (7th Cir. 2004); *No Baloney*, 2010 WL 1286720, at *16.  Further, we note that courts are reluctant to dismiss for nonjoinder where doing so nullifies the plaintiff's choice of federal forum. *Davis Cos.*, 268 F.3d at 481.

On balance, the Rule 19(b) factors indicate that even if the JN Trust were a non-joined required party, the case could and should proceed.  Any judgment returned in the absence of the JN Trust would not prejudice the trust or the current parties because all duties owed were negotiated between the litigants, who are co-trustees.  Next, dismissal of this action would leave the Estate with the remedy of returning to state court, which would be inefficient and possibly inadequate under the circumstances.  But perhaps most importantly, for purposes of the third and fourth factors, the JN Trust is no longer a crucial piece of this narrative because the JN Trust has already distributed its assets.  *See generally* Compl. Exs. C, D.  This distribution is a matter of public record, and our review

of all evidence suggests that the JN Trust no longer possesses assets to lose in satisfaction of Paragraph K.  Thus, we find that the Rule 19(b) factors weigh in favor of proceeding on with this case in this forum, even without joining the JN Trust.  For all of the foregoing reasons, the Eiteljorgs' Motion to Dismiss pursuant to Rule 12(b)(7) shall be DENIED.

## Conclusion

For the reasons detailed herein, the Eiteljorgs' Motion to Dismiss the Estate's claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(7) is DENIED, but it is GRANTED pursuant to Rule 12(b)(6).  Dismissal is WITHOUT prejudice, and the Estate is granted leave to amend its Complaint within forty-five (45) days.  Failure to do so within the allotted time, absent some exigent circumstance, will result in an order of dismissal WITH prejudice and the entry of final judgment.

IT IS SO ORDERED.

Date: _____09/27/2011_____

_Sarah Evans Barker_____

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Mark S. Alderfer
HACKMAN HULETT & CRACRAFT
LLP
malderfer@hhclaw.com

Vicki L. Anderson
HACKMAN HULETT & CRACRAFT
LLP
vanderson@hhclaw.com

27

Joseph M. Hendel

HACKMAN HULETT & CRACRAFT LLP

jhendel@hhclaw.com


Richard A. Smikle

ICE MILLER LLP

richard.smikle@icemiller.com