UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| ESTATE OF SONJA EITELJORG by | ) | |
|---|---|---|
| ROGER EITELJORG as PERSONAL | ) | |
| REPRESENTATIVE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:09-cv-0726-SEB-DML |
| | ) | |
| HARRISON EITELJORG, II and JACK M. | ) | |
| EITELJORG, | ) | |
| Defendants. | ) | |

**ORDER DENYING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Presently before the Court is Defendants' Motion for Judgment on the Pleadings [Docket No. 61], filed on December 12, 2011, pursuant to Federal Rule of Civil Procedure 12(c). Plaintiff, the Estate of Sonja Eiteljorg by Roger Eiteljorg as personal representative ("the Estate"), opposes the motion [Docket No. 65]. For the reasons detailed below, Defendants' Motion for Judgment on the Pleadings is DENIED.

**Factual Background**

This lawsuit is a regrettable aspect of a longstanding family feud among the survivors of the late Harrison Eiteljorg ("Harrison"[1]). For our purposes, the relevant subject matter dates back to 1994, when Harrison established a testamentary trust (the Harrison Eiteljorg Revocable Trust–JN, hereafter "the JN Trust") for which he served as

---

[1] Except when referring to the Estate or to Nick and Jack Eiteljorg as "the Eiteljorgs" in their capacity as joint defendants, we use first names throughout the order. We do so to alleviate the confusion otherwise inherent when several parties share a surname.

sole trustee until his death in 1997. The lifetime income beneficiary of the JN Trust was Harrison's second wife, Sonja Eiteljorg ("Sonja"); the remainder beneficiaries were Harrison Eiteljorg II ("Nick") and Jack Eiteljorg ("Jack"), the two biological children from Harrison's first marriage. Several individuals succeeded Harrison as co-trustees: Sonja, Nick, Jack, Roger Eiteljorg (Harrison's stepson and Sonja's biological son, hereafter "Roger"), and John Lienhart (Harrison's accountant and friend, hereafter "Lienhart").

Following Harrison's death, the successor co-trustees of the JN Trust found themselves at odds with one another regarding the proper allocation of trust assets. Sonja, Nick, and Jack attempted to effect a mutually agreeable solution by signing a settlement agreement on December 18, 2001 (the "Settlement Agreement"), which—if only temporarily—tamped down their disagreement. Then, after Sonja's death in July 2003, the dispute was rekindled. Sonja's Estate was opened on July 23, 2003 in the probate division of the Miami-Dade County Circuit Court in Miami, Florida,[2] and her son, Roger, served as its personal representative. Pl.'s Resp. Ex. A at 1. Nearly eight years later, in March 2011, Roger executed a document assigning the claim to three transferees on March 2, 2011. He filed a petition for discharge as personal representative of the Estate one month later and was discharged by the Florida probate court on June 28, 2011.

---

[2]Sonja was a citizen of the State of Florida at the time of her death. Accordingly, because the federal diversity statute treats the legal representative of an estate as a citizen of the same state as the decedent, the Estate is also a citizen of the State of Florida. 28 U.S.C. § 1332(c)(2); *Gustafson v. zumBrunnen*, 546 F.3d 398, 399 (7th Cir. 2008).

During this time period, notwithstanding the Settlement Agreement and its mutual release and litigation clauses (both of which underlie the parties' core dispute), the Eiteljorgs filed a verified petition in the probate division of the Marion Superior Court on January 6, 2005. Their purpose in filing suit was to seek an order removing Roger and Lienhart as co-trustees of the JN Trust. The probate court found Roger and Jack liable for breach of their fiduciary duty to administer the JN Trust according to its terms and awarded damages and fees to the Eiteljorgs in April 2010.[3] Two months later, the Indiana Court of Appeals issued a decision affirming the probate court's judgment regarding liability, reversing the probate court's calculation of fees, and remanding the action for a reassessment of compensatory damages. *In re Eiteljorg*, 951 N.E.2d 565, 570-73 (Ind. Ct. App. 2011).

Plaintiff filed the instant lawsuit on June 12, 2009, asserting breach of contract by the Eiteljorgs and requesting damages as detailed in the Settlement Agreement as well as an award of pre-judgment interest, fees, and costs. The Eiteljorgs moved to dismiss the Estate's Complaint on September 20, 2010, and the Court granted their motion without prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6). In our order dated September 27, 2011 [Docket No. 52], we granted the Estate leave to amend its Complaint. Accordingly, the Estate filed its Amended Complaint [Docket No. 56] on November 4, 2011, and the Eiteljorgs filed their Answer [Docket No. 58] on November 14, 2011. In

---

[3]The length of time between filing and disposition of the probate litigation was due in large part to the fact that the presiding judge died before a final ruling issued.

the motion currently before the Court, the Eiteljorgs seek judgment on the pleadings on the basis that the Estate lacks the capacity to sue and is not a real party in interest in the instant matter.

## Legal Analysis

### I. Standard of Review

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment after the pleadings are closed but early enough not to delay trial. *Remy, Inc. v. Tecnomatic, S.p.A.*, No. 1:08-cv-1227-SEB-WGH, 2010 WL 4174594, at *2 (S.D. Ind. Oct. 18, 2010). A motion for judgment on the pleadings is subject to the same standard of review as a motion to dismiss under Rule 12(b)(6). *Id.* (citing *Cuatle v. Torres*, No. 1:09-cv-0820-RLY-TAB, 2010 WL 2545627, at *1 (S.D. Ind. June 15, 2010)). This analysis necessarily implicates Rule 8(a), which prescribes the contents of pleadings. Fed. R. Civ. P. 8(a); *see Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007) (requiring a "short and plain statement" to demonstrate the pleader's entitlement to relief).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Similarly, a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Greater*

4

*Indianapolis Chapter of N.A.A.C.P. v. Ballard*, 741 F. Supp. 2d 925, 930 (S.D. Ind. 2010). But where the properly pleaded facts do not permit the court to infer "more than the mere possibility of misconduct," the pleader has not satisfied his burden. *Id.* at 931 (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009)).

If, on a motion for judgment on the pleadings, the parties present matters outside the pleadings, the motion will be treated as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). However, judicially noticed documents such as "historical documents, documents contained in the public record, and reports of administrative bodies" may be considered by the court at this stage of litigation without converting the motion into a motion for summary judgment. *Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998). All uncontested allegations to which the parties had an opportunity to respond must be accepted as true. *United States v. Wood*, 925 F.2d 1580, 1581 (7th Cir. 1991).

A motion for judgment on the pleadings is a motion for judgment on the merits. *Smith v. Jupiter Aluminum Corp.*, No. 2:09-cv-356, 2011 WL 197577, at *2 (N.D. Ind. Jan. 18, 2011); *see also* 5C WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE CIVIL § 1369, at 261 (3d ed. 2007). If judgment is entered for the moving party, a motion for judgment on the pleadings will result in the final disposition of the action. *Id.*

## II. Discussion

In the sole count of the Amended Complaint, the Estate seeks monetary damages for injuries resulting from the Eiteljorgs' alleged breach of the Settlement Agreement.

The Eiteljorgs argue that such an award is inappropriate because the Estate is no longer a recognized legal entity. They further assert that Roger has been discharged from his duties as personal representative of the Estate and, therefore, "the Estate of Sonja Eiteljorg by Roger Eiteljorg as personal representative" does not exist. According to the Eiteljorgs, the case before the Court is now a "suit by a non-entity" which lacks capacity to sue and is not a real party in interest. Thus, the Eiteljorgs contend that they are entitled to judgment on the Amended Complaint as a matter of law because the Estate has no right or power to maintain an action in federal court.

We note preliminarily that "[t]he capacity of an individual, other than one acting in a representative capacity, to sue . . . [is] determined by the law of the individual's domicile. . . . In all other cases[,] capacity to sue or be sued [is] determined by the law of the state in which the district court is held." *Owner-Operators Indep. Drivers Ass'n, Inc. v. Mayflower Transit, Inc.*, No. 1:98-cv-0457-SEB-VSS, 2006 WL 1794751, at *5 n.9 (S.D. Ind. June 27, 2006) (citing Fed. R. Civ. P. 17(b)(3)). Pursuant to the Indiana Code, the legal representative of the deceased has capacity to sue or be sued; such representative may bring a civil action which "is considered a continued action and accrues to the representative[] . . . at the time the action would have accrued to the deceased if the deceased had survived." Ind. Code § 34-9-3-1(b). Successor personal representatives "have all the rights and powers of [their] predecessor[s]" except for rights and powers that are expressly personal. *Id.* § 29-1-10-8. Moreover, Indiana case law makes clear that "the estate of a decedent cannot be a party to an action without some form of

6

representation." *Pasley v. Am. Underwriters, Inc.*, 433 N.E.2d 838, 841 (Ind. Ct. App. 1982) (citing *Wilson v. King's Estate*; 170 N.E.2d 63 (Ind. Ct. App. 1960); *Carr v. Schneider's Estate*, 51 N.E.2d 392 (Ind. Ct. App. 1943)). The party asserting lack of capacity bears the burden of proof on the issue and must raise it as an affirmative defense. Ind. Trial R. 9(A).

Rule 17(A) of the Indiana Rules of Trial Procedure requires every action to be brought in the name of the "real party in interest." Ind. Trial R. 17(A). This term refers to "the person who is the true owner of the right sought to be enforced." *Hammes v. Brumley*, 659 N.E.2d 1021, 1030 (Ind. 1995). Under Indiana's probate code, "the personal representative of the decedent may bring an action to recover assets . . . [and] [t]he right to bring such an action is specifically vested in the personal representative." *Spitler v. Schell*, 205 N.E.2d 155, 158 (Ind. 1965).

Here, there is no question that Indiana law vests in Plaintiff, the Estate of Sonja Eiteljorg by Roger Eiteljorg as personal representative, the capacity to sue and be sued. Plaintiff therefore had the capacity to file its initial pleadings in the United States District Court for the Southern District of Indiana on June 9, 2012. It is equally clear that Plaintiff was the proper real party in interest at the time the action was commenced. Indeed, the parties do not dispute Plaintiff's capacity to sue or its status as real party in interest as of the filing of the Original Complaint. What is disputed, however, is the practical effect that Roger's filings in the Florida probate court—to wit, the assignment of the claim and the petition for discharge—have on the status of the parties in the case at

7

bar.  Plaintiff contends that the Estate remains a suitable party to this lawsuit based on a straightforward application of Rule 25(c) of the Federal Rules of Civil Procedure.  By contrast, the Eiteljorgs assert that the 2011 developments in the Florida probate court preclude Plaintiff from continued participation in the present matter and, therefore, compel this court to grant judgment on the pleadings in the Eiteljorgs' favor.

The Eiteljorgs reference a substantial excerpt of *Hawkeye Security Insurance Company v. Porter*, 95 F.R.D. 417 (N.D. Ind. 1982), to support their contention that the Florida probate court's June 2011 grant of Roger's petition for discharge (the "Order of Discharge") stripped Plaintiff of its capacity to sue.  They direct the Court's attention to the reasoning employed in *Porter* by emphasizing the following language in their brief:

> [T]he discharge of the personal representative by the probate court acts not only as a release from any further duties to the estate, but acts also as a bar to suit against the personal representative's fraud, mistake, or willful misconduct.
> ***
> Thus, at the time of the filing of this action in federal court, Minnie Porter was no longer personal representative of the estate, and said estate had ceased to exist as a legal entity. . . . Since an estate must cease to exist as a legal entity once it has been fully probated and the personal representative has been discharged, it necessarily follows that the default judgment entered by [the court] . . . against Minnie Porter in her capacity as personal representative of Arthur Buck's estate constitutes a judgment against a non-entity.

*Porter*, 95 F.R.D. at 418-19.  As we understand the Eiteljorgs' position, they rely on *Porter* to bolster an otherwise rather conclusory argument that a grant of judgment on the pleadings in their favor is a foregone conclusion.  We remind the Eiteljorgs, however, that in ruling on a motion for judgment on the pleadings, we examine the factual sufficiency

8

of the pleadings and any reasonable inferences arising therefrom. Based on the facts as contained in the pleadings, it would be unreasonable for this court to draw the inference that *Porter*'s result of dismissal is appropriately applied here.

The facts of *Porter* compared to the facts of the Eiteljorgs' case shows them to be inapposite. *Porter* arose out of an automobile accident and involved a dispute between an insurance company and Minnie Porter in her capacity as personal representative of the Estate of Arthur Buck. *Porter*, 95 F.R.D. at 418. Probate of Mr. Buck's estate was completed on January 26, 1981, and Ms. Porter was contemporaneously discharged as personal representative. However, the insurance company did not file suit against Ms. Buck in her representative capacity until April 2, 1981. *Id.* at 418-19. As a result, the district court relied on the important distinction that "*at the time of the filing of this action in federal court*, Minnie Porter was no longer personal representative of the estate, and said estate ha[d] ceased to exist as a legal entity." *Id.* at 419 (emphasis added). Ms. Porter was not the real party in interest; moreover, the district court's observation that "a gap of more than two months separate[d] the closing of [the] estate . . . from the filing of this action" informs us that the *Porter* court properly allowed a reasonable opportunity for the real party in interest to be joined or substituted under Federal Rule of Civil Procedure 17(a)(3).[4] Fed. R. Civ. P. 17(a)(3); *see also CWCapital Asset Mgmt., LLC v. Chi. Props.,*

---

[4]Rule 17(a)(3) of the Federal Rules of Civil Procedure provides, in relevant part, that "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest

(continued...)

*LLC*, 610 F.3d 497, 502 (7th Cir. 2010). It was therefore wholly proper in *Porter* for the court to conclude that without a real party in interest or an estate that still had capacity to sue as a legal entity, no judgments in that case could be rendered against Ms. Porter in her representative capacity. *Porter*, 95 F.R.D. at 419.

By contrast, the sequence of events underlying the present lawsuit easily distinguishes it from *Porter* and requires a different result. Probate of the Estate in Florida state court began on July 23, 2003. While the Florida probate suit was pending, Roger, as personal representative for the Estate, filed this lawsuit alleging breach of contract by the Eiteljorgs in our court. On March 2, 2011, Roger Eiteljorg executed an "Assignment of Claim" in his representative capacity for the Estate, which document provided, in relevant part, as follows:

> Roger Eiteljorg, as Personal Representative of the Estate of Ellen Sonja Eiteljorg, Miami-Dade County Circuit Court, Probate Division Case No. 01-1367(02), party of the first part, as a distribution from such Estate to Roger Eit[el]jorg, Vivian Wunsch and James Eiteljorg, together parties of the second part, . . . does hereby distribute, grant, bargain, sell, assign, transfer and set over unto the said parties of the second part, in equal interests, all the right, title, and interest owned and held by the party of the first part to the claim against Harrison Eiteljorg II and Jack M. Eiteljorg . . . in that certain suit filed in [t]he United States District Court for the Southern District of Indiana.

Pl.'s Resp. Ex. A at 1, 3. Roger filed a petition for discharge as personal representative of the Estate on April 15, 2011, which the Florida probate court granted on June 28, 2011.

---

[4](...continued)
to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest."

*Id.* at 1 ¶¶ 4-5; Defs.' Br. Ex. B. Thus, according to Roger, the effect of the Order of Discharge was to transfer his interest in the federal lawsuit to Roger Eiteljorg, Vivian Wunsch, and James Eiteljorg, each in his or her individual capacity ("the Transferees").

A well-established tenet of Indiana law[5] is that "any cause or right of action may be assigned that, in accordance with the rules relating to the survivability of causes of action . . . would . . . survive to [the assignor's] legal representative." *State Farm Mut. Auto. Ins. Co. v. Estep*, 873 N.E.2d 1021, 1025 (Ind. 2007). Furthermore, a right to damages for breach of contract is assignable under Indiana law, although rights arising under personal services contracts are generally not assignable. *INS Investigations Bureau, Inc. v. Lee*, 709 N.E.2d 736, 741 (Ind. Ct. App. 1999). The breach of contract claim for the Eiteljorgs' alleged violation of the Settlement Agreement arises from a legitimately executed document that contains no language prohibiting assignment of the claim. *See generally* Am. Compl. Ex. A (the Settlement Agreement). Therefore, the claim originally brought by the Estate appears facially assignable under general principles of Indiana law.

When a party to a lawsuit transfers his interest in the matter, the transferee may, in certain circumstances, become a party as well. *See Hofheimer v. McIntee*, 179 F.2d 789, 792 (7th Cir. 1950) (holding that "if [a transferee] acquires [this interest] after suit is

---

[5]This case is before the Court on diversity jurisdiction. Because the parties raise no conflict of law issues and the case was filed in a federal court in Indiana, we apply Indiana law. *See RLI Ins. Co. v. Conseco, Inc.*, 543 F.3d 384, 390 (7th Cir. 2008).

brought, *i.e.*, *pendente lite*, then he may be made a party"). Timing of the transfer is a determinative factor; specifically, timing dictates whether Rule 17 or 25 of the Federal Rules of Civil Procedure governs the transferee's continued status in the litigation. "Rule 17(a) applies to interests transferred prior to commencement of an action. . . . Rule 25(c), an extension of Rule 17(a), controls situations where an interest is transferred *during* the pendency of an action." *Tate v. Snap-On Tools Corp.*, No. 90-c-4436, 1997 WL 106275, at *4 n.7 (N.D. Ill. Feb. 11, 1997); *see also Commonwealth Edison Co. v. Diversified Techs. Grp., Inc.*, No. 93-c-4138, 1993 WL 479046, at *2 (N.D. Ill. Nov. 17, 1993) (noting that "Rule 25(c) only applies when the transfer of interest occurs during the pendency of an action"). Having already established that Plaintiff—a real party in interest when this action commenced—properly assigned its interest in the case at bar to the Transferees *pendente lite*, we look to Rule 25(c) for guidance as to whether the suit may continue with the Transferees as parties. *See, e.g.*, *Froning's, Inc. v. Johnston Feed Serv.*, 568 F.2d 108, 110 (8th Cir. 1978); *Unison Realty Corp. v. RKO Theatres, Inc.*, 35 F.R.D. 232 (S.D.N.Y. 1964); 7A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1958, at 663 (1972).

Pursuant to Rule 25(c), "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." Fed. R. Civ. P. 25(c). The decision to substitute a party under this rule is within the discretion of the trial court. *Otis*

*Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 743 (7th Cir.1985).

Importantly, this rule is intended to further the policy goals of efficient litigation:

> The most significant feature of Rule 25(c) is that it does not require that anything be done after an interest has been transferred. The action may be continued by or against the original party, and the judgment will be binding on his successor in interest even though he is not named. An order of joinder is merely a discretionary determination by the trial court that the transferee's presence would facilitate the conduct of the litigation.

*Id.* (quoting 7A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1958, at 664-65 (1968) (citations and quotation marks omitted)). A transferee generally "takes over without any other change in the status of the case." *Brook, Weiner, Sered, Kreger & Weinberg v. Coreq, Inc.*, 53 F.3d 851, 852 (7th Cir. 1995) (citing *Kaplan v. Joseph*, 125 F.2d 602, 606 (7th Cir. 1942)). As a result, the Transferees' status in this litigation—just like the substantive claim raised in the Amended Complaint—is identical to that of the original litigant. *See id.* The Seventh Circuit's well-reasoned justification for this precept of law is that "[a]ny other approach would make a shambles of litigation; a party could sell its interest or change its internal structure . . . and require the court to start from scratch." *Id.*

Here, we are mindful of the long history between the litigants and find that maintaining the status quo of the parties is the best way to push this dispute ahead toward a final resolution on the merits. We therefore find it proper for the litigation to continue

in the name of the Estate[6] and conclude that the Eiteljorgs' Motion for Judgment on the Pleadings must be DENIED.

## Conclusion

For the reasons set forth in this entry, the Court DENIES Defendants' Motion for Judgment on the Pleadings.

IT IS SO ORDERED.

Date:     05/03/2012

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

---

[6] We decline to substitute or join the Transferees as Plaintiffs *sua sponte* at this time. Because Roger Eiteljorg is one of the Transferees, and having no evidence before us to the contrary, we do not believe that the Transferees' presence would facilitate the conduct of the litigation.

Copies to:

Mark S. Alderfer
HACKMAN HULETT & CRACRAFT LLP
malderfer@hhclaw.com

Vicki L. Anderson
HACKMAN HULETT & CRACRAFT LLP
vanderson@hhclaw.com

Joseph M. Hendel
HACKMAN HULETT & CRACRAFT LLP
jhendel@hhclaw.com

Brian J. Paul
ICE MILLER LLP
brian.paul@icemiller.com

Richard A. Smikle
ICE MILLER LLP
richard.smikle@icemiller.com